**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
*Fort Lauderdale Division*
www.flsb.uscourts.gov

In re:

**OUTTA CONTROL SPORTFISHING, INC.,**

      Debtor.

_____/

**CASE NO. 22-12081-PDR**

Chapter 11
Small Business Sub Chapter V

## MOTION TO DISMISS CHAPTER 11
## AND/OR RENEWED MOTION FOR STAY RELIEF
## AND/OR RENEWED MOTION FOR ADEQUATE PROTECTION

L.E.T. Holding of Hollywood, LLC ("LET") a creditor and interested party herein, through undersigned counsel and pursuant to Sections 361, 362 and 363 and 1112 of the Bankruptcy Code, 11 U.S.C. §§ 361, 362 and 1112 (generally, the "Code"), Rules 4001, 9006 and 9014 of the Federal Rules of Bankruptcy Procedure (as to each a "Rule" or together the "Rules"), and Rules 4001-1 and 9013-1 and of the Local Rules for the United States Bankruptcy Court for the Southern District of Florida (as to each a "Local Rule" or together the "Local Rules), seeks the entry of an Order dismissing this chapter 11 case (the "Bankruptcy" or the "Case") as – without limitation - having been filed in bad faith, (generally, the "Motion"), alternatively LET renews its prior motion(s) for relief from the automatic stay (CP # 16), and for adequate protection and in support states:

### Jurisdiction

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2.    Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

3.      The statutory basis for the relief requested herein is Sections 361, 362, and 1112 of the Code.

## Background facts

4.      This is a two-party case.

5.      LET and the Debtor and its owner, Ralph Hawkins, have a lengthy and difficult business relationship.

6.      The raison d'etre for this dispute between the parties is the M/V American Patriot, an ocean-going vessel Official No. 592015, and her engines, tackle, appurtenances, etc. (the "Vessel"). The Vessel is a charter fishing boat which operates out of Fort Myers Florida.

7.      The Debtor[1] purchased the Vessel in 2019 for $500,000 (five hundred thousand dollars). A true copy of the contract of sale (as filed herein by the Debtor, is attached as Exhibit A).

8.      The seller gave a $300,000 purchase money loan, so the Debtor's cash to purchase the Vessel was $200,000. That $200,000 was actually LET's money (which the Debtor will dispute) but LET intends to leave that issue for another day.

9.      The principal of LET, Lewis Tidaldi, is a longtime friend of Hawkin's parents. After purchasing the Vessel Hawkins approached Tidaldi and asked to borrow funds to upgrade the Vessel. Tidaldi agreed to a short-term loan.

---

[1]      At this point, the Debtor's disorganized documentation and/or lack thereof is so erratic that it is never clear who owns what, but the allegations regarding "ownership" are true to the best of LET's knowledge.

10.     In or about mid-2020, LET loaned $2,600,00.00 (Two Million Six Hundred Thousand Dollars) (generally, the "Loan") to the Debtor for the purpose of repairing the Vessel, refitting the Vessel, rendering Vessel seaworthy and supplying other necessaries to Vessel (for ease, the "Retrofit"). Hawkins personally guaranteed the Loan.

11.     The particulars of the Loan, the Retrofit  and other machinations are laid out in the Complaint and exhibits ("Complaint") which LET filed against the Debtor, Hawkins and the Vessel in the District Court for the Middle District of Florida, Fort Myers Division Case No. 22-cv-89 (the "District Court Case"). A true copy of that Complaint is attached as Exhibit B.

12.     The Retrofit was duly completed, and the Debtor thereupon began to operate the Vessel.

13.     It is important to note that the Vessel - purchased for $500,000 in 2019 - is now worth, between $1,650,000 (by the Debtor's drive by estimate) and $3.5 Million (by LET's actual survey).

14.     To date, the Debtor has never made a single payment on the Loan or otherwise compensated LET.

15.     Upon information and belief, the Debtor generates (or did generate) between $200,000 and $250,000 per month in revenue from its operation of the Vessel subsequent to the Retrofit.

16.     The Debtor always failed and refused to insure the Vessel to the extent of its full fair market value and has, in fact significantly under-insured. Previously, the Debtor underinsured the hull of the Vessel for a mere $300,000.00 – one tenth of the hulls value - without naming LET as the loss payee. This amount coincides with the purchase money mortgage.

17.     The under-insurance issue appears to be partially solved by the Debtor's procurement of a $2,000,000 insurance policy. While LET takes issue with the amount of the insurance, that is not the focus of this Motion.

18.     The Debtor and LET have engaged in sporadic negotiations over the last several years regarding the Loan and ongoing default(s). Despite many machinations, settlements and quasi agreements, none has resulted in any payment or other compensation to LET. Just by way of example, in September of 2020, the Debtor agreed to simply transfer the Vessel to LET. The Bill of Sale executed by the Debtor is attached hereto as Exhibit C. When the Coast Guard refused to recognize the Bill of Sale, the Debtor lost interest in that mode of settlement and refused to re-execute the Bill of Sale.

19.     Last – and most important here – the Debtor pays its day-to-day bills and expenses; hence, it has no unsecured creditors.[2]

20.     As a result of its default on the Loan, LET filed the District Court Case and arrested the Vessel on March 9, 2022.

---

[2]   This "fact" was alleged in LET's prior stay relief motion (CP # 16) as being "upon information and belief". It has now been confirmed.

21.     This bankruptcy followed on March 16, 2022 (the "Petition Date").

## THE BANKRUPTCY

### The Turnover

22.     Upon filing this Case, the Debtor immediately filed its "Emergency Motion Pursuant To Sections 362 And 543 Of The Bankruptcy Code For An Order Compelling The Substitute Custodian To Turnover The American Patriot Vessel To The Debtor" (CP # 7, the "Turnover Motion").

23.     As the Court is aware, after two hearings and the procurement of the $2 Million Dollar insurance policy, the Court ordered the turnover of the Vessel to the Debtor by its Order dated March 31, 2022, (CP # 37, the "Turnover Order").

24.     The Vessel was immediately turned over and on information belief, the Debtor has resumed its profitable use of the Vessel without any compensation to LET.

25.     Acutely aware of its rights under Section 543, the Debtor is less familiar with the obligations of a debtor in chapter 11 generally, and subchapter 5 particularly.

### THE DEBTOR'S DOCUMENTS

26.     The Debtor's filings have provided almost no insight into the Debtor's business operations.

27.     Section 1116 of the Code requires the Debtor to file, with its petition, a form showing its most recent balance sheet, statement of operations or cash flow statement and its most recent tax return ("1116 Statement"). The Debtor's 1116 Statement (CP # 22) contains only a statement that those documents have not been

prepared and no tax returns filed (despite continued corporate existence going back decades). The 1116 Report is attached as Exhibit D.

28.     Local Rule 2081-1(A) requires the Debtor to file Payroll and Sales Tax Reports (the "2018 Filing"). The Debtor's 2081 Filing contains no information, just the repeated "TBD"). The 2081 Report is attached as Exhibit E.

29.     The most interesting document filed by the Debtor was its Schedules.

30.     The Debtor has no unsecured creditors. It has three secured creditors, LET and two smaller ones (Amberjack Cruises, LLC, ($300,000) and Fourchon Charters, LLC ($290,000), ("Amberjack", "Fourchon" and generally, the "Smaller Loans").

31.     The two Smaller Loans are both current. And although the Schedules list them as contingent, unliquidated and disputed, the Debtor admitted at the 341 meeting that they were not contingent unliquidated or disputed - and were current.

32.     The Schedules list one unsecured creditor, the Marco River Marina, Inc, where the Vessel is docked. However, at the 341 meeting the Debtor testified that the marina is paid current.

33.     The Debtor also lists a second vessel identified as the "Super Sea Legs 1074262" (the "Sea Legs"). The "ownership" *vel non* of the Sea Legs is murky. However, the Debtor lists it as an asset with a valuation "unknown."  The Debtor testified at the 341 meeting that the Sea Legs was hardly being used commercially.

34.     The Schedules indicate that the Debtor owns personalty valued at $164,000, $139,00 of which is cash.

35.     Thus, other than the Vessel, the Debtor has hardly few assets.

36.     After repeated questioning at the 341 meeting on April 18, 2022, the Debtor repeated that the Schedules are accurate, and it has nothing to add.

37.     So, there are no creditors – few assets - and the sole and only focus of this Bankruptcy is LET and its rights in the Vessel.

## THE 341 MEETING

38.     The Debtor duly appeared through Hawkins at the 341 meeting.

39.     LET does not yet have the transcript but expects to have it and upload it prior to the hearing on this Motion.

40.     Hawkins testified that the Debtor did not provide any financial information because it doesn't have any. The Debtor maintains no books and records. The Debtor doesn't have any form of accounting software.

41.     Alternatively, and conjunctively with the preceding paragraph, the Debtor blamed its last accountant, who was replaced in November 2021. The motion seeking approval of the retention of the "replacement" accountant is scheduled before this Court for April 21, 2022.

42.     For clarity, November 2021 is nearly half a year ago, and yet the Debtor has no books, no records, no tax returns.

43.    Rather, the Debtor testified that its new accountant is going to <u>create</u> a set of books and then file the numerous tax returns.

44.    Hawkins testified that LET did not loan money to the Debtor, rather, it invested in a related, defunct company. Hawkins could not reconcile why the Debtor signed a Note and Mortgage to LET for $2,600,000.00 (the Note and Mortgage are attached as part of Exhibit A).

45.    Hawkins testified that the two smaller mortgages were not disputed but were listed as disputed in the Schedules.

46.    The Debtor's Schedules indicate that the Debtor possessed on the petition date, $133,000.00 in "client deposits". Inexplicably, Hawkins testified that his credit card processor was able to extract funds from that account. Hawkins also struggled to reconcile the client deposit issues with the fact that there were no books and records to document any of it.

47.    The Debtor testified that other than Hawkins, it had no employees, and paid for casual labor on 1099 basis.

48.    This Motion seeks a dismissal of the Case, with prejudice.

49.    It is one thing for the Debtor to string LET along while living off its asset, it is quite another to ask the Court to put its imprimatur on that scheme.

50.    There is no "case" here and this bankruptcy should be dismissed with prejudice.

## **MOTION TO DISMISS**

It has long been the law in this district that bad faith cases, such as this one, are dismissed. See, generally, In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir.1988 See also In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir.1984).

Section 1112(b)(1) provides in relevant part: "Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ..." The filing of a Chapter 11 case in bad faith constitutes cause. In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988). Although there is no particular test for determining whether a debtor has filed a petition in bad faith , courts may consider factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." Id. (quoting Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd. ), 749 F.2d 670, 674 (11th Cir. 1984) ). In Phoenix Piccadilly, the Eleventh Circuit affirmed the district court's decision affirming the bankruptcy court's dismissal of a case for cause pursuant to § 1112(b). In doing so, the Eleventh Circuit noted the presence of the following circumstantial factors previously identified by courts as evidence of a bad faith filing:

> (i)     the debtor has only one asset in which it does not hold legal title;
>
> (ii) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

(iii) the debtor has few employees;

(iv) the property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in a pending state court action; and

(vi) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

Piccadilly at 1394.

The Piccadilly factors are guideposts rather than a rigid standard for determining bad faith. In re Stafford Rhodes, LLC, 2012 WL 5439041 at *3 (M.D. Ga. Nov. 7, 2012). A court has broad discretion to evaluate the totality of the circumstances in each case and to determine whether those [572 B.R. 389] circumstances indicate a petition was filed in bad faith. See Singer Furniture Acquisition Corp. v. SSMC Inc., N.V. (In re Singer Furniture Acquisition Corp. ), 254 B.R. 46, 51 (M.D. Fla. 2000).

It had been argued that this general legal proposition was overruled by the Bankruptcy Reform Act of 1994 and particularly Section 362(d)(3). See, generally, In re Jacksonville Riverfront Development, Ltd., 215 B.R. 239, 243 (Bankr.M.D.Fla.1997); In re Villamont-Oxford Associates Limited Partnership, 230 B.R. 457, 463 (Bankr.M.D.Fla.1998). However, other cases took the opposite view. See, In re Star Trust, 237 B.R. 827, 833 (Bankr.M.D.Fla.1999) ("[a] review of the development of 'bad faith' as cause for dismissal leads quickly to the conclusion that § 362(d)(3) does not

preempt this body of law."); accord, In re Midway Inv., Ltd., 187 B.R. 382, 388 (Bankr.S.D.Fla.1995) (concluding that "the Bankruptcy Reform Act of 1994 does not limit the Phoenix Piccadilly line of cases" in single asset cases).

It was a one-punch fight. The Eleventh Circuit completely embraced the latter view. In a case emanating out of this Court, the Eleventh Circuit ruled that the bad faith rule of Piccadilly survived the enactment of § 362(d)(3), intact. See, In Re State Street Houses, Inc., 356 F.3d 1345 (11th Cir. 2004).

In State Street, the Court dismissed the bankruptcy as being filed in bad faith based on the "Piccadilly" factors. They are, as stated in State Street,

> "the factors set forth for a bad faith filing in In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir.1988): (1) the debtor has only one asset, the property at issue; (2) the debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors; (3) the debtor has few employees; (4) the property is subject to a foreclosure action as a result of arrearages on the debt; (5) the debtor's financial problems essentially are a dispute between the debtor*1347 and the secured creditors which can be resolved in the pending state court action; and (6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights. 849 F.2d at 1394-95. See also In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984)."

State Street, 356 F.3d 1345, at 1346.

All of the Piccadilly factors are present in the instant case, to wit:

(1) the Debtor has only one actual asset, the Vessel;

(2) the Debtor has no unsecured creditors;

(3) the Debtor has only one employee, Hawkins;

(4) the Vessel is subject to the District Court action;

(5) the Debtor's financial problems are a dispute between it and LET

which can (and should be) resolved in the District Court; and,

(6) the filing of the Case overwhelmingly evidences an intent to delay

or frustrate the legitimate efforts of LET to enforce its rights in the

Foreclosure.

51.     This Case lines up on all fours (or all sixes) with <u>State Street</u> and

<u>Piccadilly</u> and must be dismissed.

## STAY RELIEF

Stay relief is appropriate here because "cause" exists.

As is relevant here, Section 362(d) states:

> (d) On request of a party in interest and after notice and a
> hearing, the court shall grant relief from the stay provided
> under subsection (a) of this section, such as by terminating,
> annulling, modifying, or conditioning such stay--

>> (1) for cause, including the lack of adequate
>> protection of an interest in property of such
>> party in interest;

>> (2) with respect to a stay of an act against
>> property under subsection (a) of the section, if -

>>> (A) the debtor does not have an
>>> equity in such property; and

>>> (B) such property is not
>>> necessary to an effective
>>> reorganization

11 U.S.C. 362(d)(1)

## 362(d)(1) "Cause"

Stay relief is appropriate under Section 362(d)(1), for cause. "Cause" is not further defined in the Bankruptcy Code, relief from the stay for cause is a discretionary determination made on a case-by-case basis. See, In re 412 Boardwalk, Inc., 520 B.R. 126 (Bankr.M.D.Fla., 2014) citing Laguna Assocs. Ltd. P'ship, 30 F.3d 734, 737 (6th Cir. 1994). Section 362(d)(1) is intended to "balance the interests of creditors and the debtor." See, e.g., In Re: Indian Palms Associates, Ltd., (Nantucket Investors V. California Federal Bank), 61 F.3d 197, at (3rd Cir. 1995). Given the straightforward facts here, there is no rational reason to not allow LET to foreclose on the Vessel.

The court looks to the totality of the circumstances in each particular case when making this determination. See, In re Bryan Road, LLC, 382 B.R. 844 (Bankr. S. D. Fla., 2008). In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997) (See also, In re Emerald Cove Villas, LLC, 2007 Bankr. LEXIS 864, *8 (Bankr. M.D. Fla. Mar. 2, 2007)). The "decision to lift the stay is discretionary with the bankruptcy judge and may be reversed only upon a showing of abuse of discretion." In re Dixie Broad., Inc., 871 F.2d at 1026. The totality of the circumstances here weighs in favor of LET, and cause exists to lift the stay. The Debtor does not appear to be unable to pay LET, it simply chooses not to. Nothing in bankruptcy will cure that intransigence. If the Debtor chose (or chooses) to address payment, it has – and has had – many opportunities to do that.

Cause for relief from the automatic stay under § 362(d)(1) is "an intentionally broad and flexible concept which must, of necessity, be determined on a case-by-case

analysis." <u>See Sumitomo Trust & Banking Co. v. Grand Rapids Hotel L.P. (In re Holly's Inc</u>.<u>), 140 B.R. 643,</u> 687 (Bankr. W.D. Mich. 1992).

The Court will note that LET's claim is listed by the Debtor as unliquidated, contingent and disputed. Thus, there will be litigation regarding LET's claim. Stay relief would make sense to have the District Court in the District Court Case address the bona fides of the LET claim, even if this Case is not dismissed.

In the end, cause under Section 362 comes down to essential fairness. See, <u>Chrysler LLC v. Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.</u><u>), 382 B.R. 90</u>, 109 (Bankr. E.D. Mich. 2008) (describing "cause" as an "elastic concept" varying with the circumstances of each case). The fair answer here is to grant stay relief and LET to continue the District Court Case either to its final conclusion, or at least, to judgment.

## <u>ADEQUATE PROTECTION</u>

Judge Kimball denied adequate protection because he heard argument that the Vessel was worth in excess of LET's Loan. LET believes that in fact the Vessel is worth $3,500,000 as opposed to its Loan of just more than $3,000,000.00.

Presently the Debtor is having its cake and eating it too. By arguing that the Vessel is worth only $1,650,000, the Debtor was able to minimize its insurance costs (the policy is for $2,000,000.00). Unless and until the Court reconsiders its findings regarding value, the Debtor must be required to adequately protect LET's interest.

Section 363(e), reads:

CASE NO. 22-12081-PDR
LET's Motion to Dismiss, etc.
Page 15 of 16

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. . . .

LET intends and requests that the Court consider this Motion to be a request under 363e for adequate protection. This adequate protection, in the very least should consist of complete insurance coverage in an amount sufficient to cover all loss, and periodic payments in an amount sufficient to compensate LET.

**WHEREFORE**, LET respectfully demands the entry of an Order dismissing this Case as having been filed in bad faith, and/or granting it relief from the automatic stay, and/or directing the Debtor to pay adequate protection, and for such other and further relief as the Court deems to be just and equitable.

## <u>CERTIFICATES OF COMPLIANCE AND SERVICE</u>

**I HEREBY CERTIFY** that on this date a true and correct copy of the foregoing was filed via EM/ECF and served on all parties entitled to notice thereby, and via email upon the Debtor's counsel Richard Robles, Esq., at rrobles@roblespa.com; the sub chapter 5 trustee, Tarek Kiem, Esq., at trustee@kiemlaw.com; the Ass't US Trustee, Adisley Cortez-Rodriguez, Esq. at Adisley.M.Cortez-Rodriguez@usdoj, upon the Debtor by mail at 5398 North Ocean Drive, Hollywood, FL 33019-4401 and by US Mail on all parties.

Respectfully submitted,

By:    **/s/ David R. Softness, Esq.**
FBN:  0513229
DAVID R. SOFTNESS, P.A.
Counsel for LET
201 South Biscayne Boulevard
Suite 1740
Miami, Florida  33131

CASE NO. 22-12081-PDR
LET's Motion to Dismiss, etc.
Page 16 of 16


Email  david@softnesslaw.com
Tel:     305-341-3111

# EXHIBIT A

# AGREEMENT FOR PURCHASE OF VESSEL

THIS AGREEMENT, made and entered into this ___ day of March, 2019 between AMBERJACK CRUISES, LLC, a New York Limited Liability Company, 2558 East 29th Street, 2d Floor, Brooklyn New York 11235, Seller, and OUTTA CONTROL SPORT FISHING, INC., a Florida Corporation, 5398 North Ocean Drive, Hollywood, Florida 33019, Buyer, is for the sale of the vessel "AMBERJACK V . Official No. 592015" (the "Vessel") on the following terms:

1. The parties agree that Seller shall sell, transfer and convey the Vessel to Buyer for a sales price of $500,000.00.

2. Sale date shall be on the ___ day of March, 2019.

3. Delivery shall be made at the berth in Sheepshead Bay, New York on        March, 2019 at which time, title and risk shall pass to the Buyer.

4. Prior to or contemporaneously with the transfer, and after the final sea trial, Buyer shall wire transfer a payment of $200,000.00 to Seller's account.

5. Upon delivery of this payment, Seller shall deliver a duly executed, bill of sale on USCG form CG-1340 or equivalent in a form suitable for filing, all documents currently on board the vessel, all personal property connected to the vessel to include but not limited to, all running gear as well as all items presently on board relating to minimum coast guard safety and navigational standards, to Buyer.

6. Also contemporaneously with this transfer, Buyer shall sign and deliver a promissory note and mortgage in favor of Seller, who will hold said note, in the amount of $300,000.00. The terms, more fully set out in the Promissory Note and Preferred Ships Mortgage, are a repayment term of 48 months at 5% interest per annum, with monthly payments of $3,000.00 due on the first day of each month until maturity. Upon maturity the balloon payment of $208,087.38, and any accrued unpaid interest, principal or advances, shall be due on the 48th payment.

7. The vessel will be transported to Florida at Buyer's expense.

8. Upon reaching Florida, Buyer shall "haul out" the vessel to inspect the bottom for any damages (rather than the parties incurring the cost to do a haul out prior to, closing) and if the hull is found to have any cracks, dents, or damages to the bottom plate, not attributable to post-delivery operation, the Seller will contribute up to $15,000.00 towards repairs of any such damages.

9. NO WARRANTIES. BUYER ACCEPTS AND AGREES THAT THE VESSEL IS SOLD IN "AS IS" CONDITION "WITH ALL FAULTS." BUYER EXPRESSLY AGREES THAT NO WARRANTIES OR

REPRESENTATIONS, EXPRESS OR IMPLIED, HAVE BEEN MADE DIRECTLY OR INDIRECTLY CONCERNING THE CONDITION OR USE OF THE VESSEL AND THAT HE HAS NOT RELIED UPON ANY ORAL REPRESENTATION AS TO THE CONDITION OR CAPABILITY OF THE VESSEL OR ITS APPURTENANCES OR EQUIPMENT. SELLER AND BROKERS DISCLAIM ALL WARRANTIES, EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE VESSEL, ITS FITNESS FOR ANY PARTICULAR PURPOSE OR ITS MERCHANTABLITY.

10. The persons signing this Agreement and the documents relating to the transaction, including
the Bill of Sale, Promissory Note and Preferred Ship Mortgage, represent and warrant that they have full power and legal authority to perform this agreement and to execute such documents on behalf of the Seller and Buyer, as the case may be.

11. This Agreement shall be governed by the laws of the State of New York without regard to any conflict of laws or choice of law rules which may otherwise apply. The parties agree to

jurisdiction in any competent court located within the City of New York.

OUTTA CONTROL SPORTFISHING, INC.

A Florida Corporation

By: _____

Name: Ralph Hawkins

Title: President

AMBERJACK CRUISES, LLC.

A New York Limited Liability

By: _____

Name: Metin Tunc

Title: Owner

1

501370.1

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN ADMIRALTY

CASE NO. ___22-cv-89___

L.E.T. HOLDING OF HOLLYWOOD, LLC,
a Florida Limited Liability Company,

        Plaintiff,

vs.

M/V AMERICAN PATRIOT, Official No. 592015,
her engines, tackle, appurtenances, etc., *in rem*, and
OUTTA CONTROL SPORTFISHING, INC., *in personam*,
and RALPH HAWKINS *in personam*,

        Defendants.
_____/

## **VERIFIED COMPLAINT**

Plaintiff, L.E.T. HOLDING OF HOLLYWOOD, LLC, by and through his undersigned counsel hereby sues the M/V AMERICAN PATRIOT, Official No. 592015, her engines, tackle, appurtenances, etc. *in rem* and her owners, managers and operators OUTTA CONTROL SPORTFISHING, INC. and RALPH HAWKINS, *in personam*, and states:

### **PARTIES, JURISDICTION, AND VENUE**

1.     This is an admiralty and maritime claim within the jurisdiction of the United States and this Honorable Court pursuant to 28 U.S.C. §1333 and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.     This is an action to enforce a lien *in rem* against the M/V AMERICAN PATRIOT, an ocean-going vessel, to arrest the property of Outta Control Sportfishing, Inc.

pursuant to a loan agreement and preferred ship mortgage and for judgment against OUTTA CONTROL SPORTFISHING, INC. and RALPH HAWKINS *in personam* pursuant to the perfected maritime lien held by L.E.T. HOLDING OF HOLLYWOOD, LLC.

3.     This claim is brought pursuant to and in accordance with the provisions of The Commercial Instruments and Maritime Liens Act, 46 U.S.C. § 31301, et seq., and under Supplemental Rule C of the Federal Rules of Civil Procedure.

4.     At all material times, Plaintiff, L.E.T. HOLDING OF HOLLYWOOD, LLC ("LET HOLDING"), a Florida Limited Liability Company with a registered office at 3111 N. Ocean Drive, Apt. 1012, Hollywood, Florida 33019.

5.     At all material times, Defendant, M/V American Patriot (the "Vessel"), *in rem*, is and was a USA flagged, inspected passenger vessel of approximately 120 feet in length, bearing the Official Number 592015, with a hailing port in Fort Myers, Florida. At all relevant times, the Vessel has been engaged in commerce and owned by Outta Control Sportfishing, Inc. and Ralph Hawkins.

6.     At all material times, Defendant, OUTTA CONTROL SPORTFISHING, INC. ("OUTTA CONTROL"), is and was a Florida Profit Corporation with a registered office at 5398 N Ocean Drive, Hollywood, FL 33019.

7.     At all material times, Defendant, RALPH HAWKINS (hereinafter "Hawkins"), is and was an individual domiciled in Broward County and the owner, manager and operator of Outta Control Sportfishing, Inc. and the M/V American Patriot.

8.     Venue is proper in this District because the Vessel is currently located within this District and expected to remain in this District pending her arrest.

## GENERAL ALLEGATIONS

9.     Pursuant to an Agreement dated 18 July 2020 (the "Loan Agreement") between Plaintiff L.E.T. Holding of Hollywood, LLC as Lender and Ralph Hawkins both individually

and as Owner of Defendant Outta Control Sportfishing, Inc. as Borrower, LET Holding loaned an aggregate sum of $2,600,000.00 to Outta Control for the purpose of repairing the Vessel, refitting the Vessel, rendering Vessel seaworthy and supplying other necessaries to the Vessel. A copy of the original Loan Agreement is attached as Exhibit "1".

10.     As security for its joint and several obligations under the Loan Agreement, including the indebtedness Ralph Hawkins and Outta Control Sportfishing, Inc. assumed thereunder, Defendants Ralph Hawkins and Outta Control Sportfishing, Inc. made certain covenants in a Preferred Ship Mortgage on the M/V AMERICAN PATRIOT (attached hereto as Exhibit "2") and a Promissory Note (attached hereto as Exhibit "3") dated 30 June 2020.

11.     Hawkins and Outta Control Sportfishing, Inc. material breaches of the Loan Agreement, the Preferred Ship Mortgage and the Promissory Note include, but are not limited to, failing to make any repayment of principal amount in accordance with the terms thereof.

12.     On September 21, 2020, acknowledging the Defendants' failure to make scheduled repayments, Ralph Hawkins as President of Outta Control Sportfishing, Inc. executed a Bill of Sale (attached hereto as Exhibit "4") transferring ownership of the Vessel to Lewis Tedaldi of L.E.T. Holding Hollywood, LLC and in accordance with the terms of the Loan Agreement.

13.     The Defendants have subsequently refuted the validity of this transfer of ownership and have continually to fail to make any repayment of the monies loaned to it for the purpose of repairing the Vessel, refitting the Vessel, rendering Vessel seaworthy and supplying other necessaries to the Vessel.

## COUNT I
## FORECLOSURE OF MARITIME LEIN *IN REM*

14.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 13 of this Complaint, and further alleges as follows:

15.     As a result of Hawkins and Outta Control's above-described failure to make payments as required, Defendants Hawkins and Outta Control have breached the terms and conditions of the Loan Agreement, the Preferred Mortgage and Promissory Note.

16.     Accordingly, Defendants Hawkins and Outta Control are liable for the sums owed under the Loan Agreement, the Preferred Mortgage and Promissory Note.

17.     LET Holding has duly performed all of its obligations under the terms of the Loan Agreement, the Preferred Mortgage and Promissory Note.

18.     LET Holding has incurred and will incur other further costs, including attorneys' fees, in exercising its rights under the Loan Agreement, the Preferred Mortgage and Promissory Note, which are recoverable in accordance with the terms of the Loan Agreement.

19.     The Loan Agreement, the Preferred Mortgage and Promissory Note, together with the Defendants' liability for breach of the Loan Agreement, the Preferred Mortgage and Promissory Note give rise to a maritime lien on the vessel in the amount of $2,600,000.00 in principal and $280,899.99 in interest and a late payment penalty of $144,045.00 as of February 9, 2022, plus applicable default interest and costs and expenses of enforcement, with interest currently continuing to accrue.

20.     LET Holding is entitled to judgment *in rem* against the Vessel and the immediate arrest thereof under Supplemental Rule C of the Federal Rules of Civil Procedure, to satisfy the above-described maritime lien.

21.     LET Holding agrees to hold harmless and indemnify the U.S. Marshal and all his deputies from any liability as a result of seizing the Vessel.

## COUNT II
## BREACH OF PREFERRED SHIP MORTGAGE

22.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 21 of this Complaint, and further alleges as follows:

23.     As a result of the above-described breaches of the Loan Agreement, Hawkins and Outta Control have breached the terms and conditions of the Preferred Mortgage, which is a preferred mortgage in accordance with 46 U.S.C. § 31301(6)(A).

24.     By the terms and conditions of the Loan Agreement, Preferred Ship Mortgage and Promissory Note, Hawkins and Outta Control are indebted to LET Holding for the sum of at least $2,600,000.00 in principal and $280,899.99 in interest and a late payment penalty of $144,045.00 as of February 9, 2022, plus applicable default interest and costs and expenses of enforcement, with interest currently continuing to accrue.

24.     Plaintiff LET Holding is entitled to judgment *in personam* against Hawkins and Outta Control in the amount of least $2,600,000.00 in principal and $280,899.99 in interest and a late payment penalty of $144,045.00 as of February 9, 2022, plus applicable default interest and costs and expenses of enforcement.

**WHEREFORE**, Plaintiff LET Holding respectfully requests:

A.     That a Warrant for Arrest *in rem* be issued against M/V AMERICAN PATRIOT, her engines, tackle, apparel, etc., and all other equipment and necessaries belonging and appurtenant thereto, and that all persons claiming any interest in the Vessel may be cited to appear and answer the matters aforesaid, and that the Vessel, her engines, tackle, apparel, etc., and all other necessaries belonging and appurtenant thereto, may be seized, condemned, and sold to pay the demands and claims of the Plaintiff, together with all interest, costs, attorneys' fees, and any other sums owed to the Plaintiff pursuant to the Loan Agreement, Preferred Ship Mortgage and Promissory Note; and

B.     That the Loan Agreement, Preferred Ship Mortgage and Promissory Note executed by OUTTA CONTROL SPORTFISHING, INC. and RALPH HAWKINS, individually, may be declared to be a valid and subsisting preferred

maritime lien upon the *in rem* Defendant M/V AMERICAN PATRIOT, her engines, tackle, apparel, etc., and all other equipment and necessaries belonging and appurtenant thereto, which is prior and superior to the interest, liens, or claims of any and all persons, firms, or corporations whatsoever, and that it may be decreed that any and all persons, firms, and corporations claiming any interest in the Vessel are forever barred and foreclosed from all rights or equities for redemption or claim of, in or to the mortgaged Vessel, her engines, tackle, apparel, etc., and all other necessaries and equipment belonging and appurtenant thereto and every part thereof; and

C.  That this Honorable Court shall direct the manner in which actual notice of the commencement of this suit shall be given by Plaintiff LET Holding to Defendants Hawkins and Outta Control or other individual in charge of the Vessel and to any person, firm, or corporation who has recorded a Notice of Claim of any discharged lien upon the Vessel as provided under the Commercial Instruments and Maritime Liens Act, 46 U.S.C. 31301, et seq. as amended; and

D.  That judgment be entered in Plaintiff LET Holding's favor against the Vessel M/V AMERICAN PATRIOT *in rem* in the full amount due under the Loan Agreement, Preferred Ship Mortgage and Promissory Note plus interest, charges, costs, and attorneys' fees, as well as any amounts required to be paid by Hawkins and Outta Control to LET Holding under the Loan Agreement, Preferred Ship Mortgage and Promissory Note with interest and costs, and that the Plaintiff LET Holding be permitted to bid its judgment against the Vessel at a U.S. Marshal's sale, and, further, that LET Holding reserves the right to proceed against Hawkins and Outta Control Sportfishing, Inc. and any and all guarantors under the Loan Agreement, Preferred Ship Mortgage and Promissory

Note for any deficiency that may remain due after applying the available proceeds of the sale of the mortgaged Vessel to the judgment herein; and

E.   That judgment be issued against Defendant M/V AMERICAN PATRIOT and Defendants Hawkins and Outta Control Sportfishing, Inc., jointly and severally, in the full amount then due under the Loan Agreement, Preferred Ship Mortgage and Promissory Note, plus interest, together with interest, charges, costs, and attorneys' fees, and any and all other amounts required to be paid under the Loan Agreement, Preferred Ship Mortgage and Promissory Note; and

H.   That Plaintiff LET Holding has such other and further relief as in law or equity as he may be entitled to recover.

Dated this 9th day of February, 2022.

                              Respectfully submitted,

                    By:       /s/ Neil Bayer
                              Neil Bayer, Esq.
                              Fla Bar No.: 615684

                              Campbell Johnston Clark, LLP
                              *Attorneys for the Petitioner*
                              2600 Douglas Road
                              Suite 508
                              Coral Gables, FL  33134
                              Tel. : 786-204-3784
                              Email: neil@cjclaw.com
                              Email: chase@cjclaw.com
                              Email: cindy@cjclaw.com

## **VERIFICATION**

Under penalty of Perjury, I hereby affirm that I have read the allegations contained in the

foregoing Verified Complaint, and that the allegations contained therein are true and correct.

Lewis Tedaldi as managing member of L.E.T.
Holding of Hollywood, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN ADMIRALTY

CASE NO. _____22-cv-89_____


L.E.T. HOLDING OF HOLLYWOOD, LLC,
a Florida Limited Liability Company,


        Plaintiff,

    vs.

M/V AMERICAN PATRIOT, Official No. 592015,
her engines, tackle, appurtenances, etc., *in rem*, and
OUTTA CONTROL SPORTFISHING, INC., *in personam*,

        Defendants.
_____/


# EXHIBIT "1"

# AGREEMENT

The parties hereto, Ralph Hawkins, individually and as owner of Outta Control Sport Fishing, Inc., and L.E.T. Holdings of Hollywood, LLC, hereby agree as follows:

WHEREAS, the parties acknowledge that L.E.T. Holdings of Hollywood, LLC a/k/a Lewis E. Tedaldi, individually, has loaned an aggregate sum of $2,600,000.00 to Outta Control Sport Fishing, Inc. and Ralph Hawkins, individually, which is secured by a Preferred Ship Mortgage and Note in that amount. 2nd

WHEREAS, the borrowers under that Note hereby agree to pay off the loan within 30 days of written demand to do so, anytime after such demand is made after January 1, 2021.

FURTHER, in the event borrower is unwilling or unable to satisfy that repayment in full pursuant to the instant terms, borrower agrees to tender a Bill of Sale, fully and properly executed, to L.E.T Holdings of Hollywood, LLC in lieu of the tender of a payoff in full, and agree to cooperate to execute any other documents needed to convey full and complete title to the vessel, the American Patriot (secured by the Preferred Ship Mortgage).

In the Event this Agreement is to be enforced, the prevailing party shall be entitled to attorney fees and costs.

Both parties hereto acknowledge that they had the right and ability to consult independent legal counsel to evaluate this Agreement and they now fully waive any inherent actual or perceived conflict of interest with Kurt Hilberth, Esq. in the drafting of this Agreement, and all other participation between the parties, and agree to hold him harmless in connection thereto.

Dated: 7/18/2020

Outta Control Sportfishing, Inc.

By: Ralph Hawkins, as President

By: Ralph Hawkins, individually

L.E.T. Holdings of Hollywood, LLC

By: Lewis Tedaldi, Manager    7/24/20

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN ADMIRALTY

CASE NO. ___22-cv-89___

L.E.T. HOLDING OF HOLLYWOOD, LLC,
a Florida Limited Liability Company,

          Plaintiff,

   vs.

M/V AMERICAN PATRIOT, Official No. 592015,
her engines, tackle, appurtenances, etc., *in rem*, and
OUTTA CONTROL SPORTFISHING, INC., *in personam*,

          Defendants.
_____/

# EXHIBIT "2"



# **Preferred Ship Mortgage**

on Vessel having Official No.

This Preferred Ship Mortgage ("this Mortgage") on the motor vessel AMERICAN PATRIOT (ex:*l*), having Official No. **592015** (hereinafter called the "Vessel") is

dated June _3 0_, 2020, and the
Amount of this Mortgage is: U.S. $2,600,000.00, with a
Maturity Date of: September 1, 2020.

and such Mortgage is made and given by *OUTTA CONTROL SPORTFISHING, INC, a Florida corporation*, having an address of *5398 N. Ocean Drive, Hollywood, FL 33019* (hereinafter called "Owner") and ("Mortgagor") *L.E.T. HOLDING OF HOLLYWOOD, LLC, a Florida limited liability company*, having an address of *3111 N. Ocean Drive, Apt. 1012, Hollywood, FL 33019* (hereinafter called "Mortgagee").

WITNESSETH:

WHEREAS, Mortgagor is the sole owner of the whole (100%) of the Vessel, hereinafter named and described, and is justly indebted to Mortgagee, as evidenced by a Promissory Note dated June _3 0_, 2020 (the "Note") that had been issued and made payable to *L.E.T. Holdings of Hollywood, LLC, a Florida limited liability company*. For purposes of this Mortgage and in order to comply with Section 31321(b)(3) of the Ship Mortgage Act, the parties to this Mortgage hereby declare that the maximum amount of indebtedness that is now or will in the future be owed under this Mortgage at any one time is Two Million Six Hundred Thousand and 00/100 Dollars ($2,600,000.00), plus interest, expenses and fees incurred by the Mortgagee and performance of the covenants of this Mortgage.

WHEREAS, the Mortgagor has become and is justly and truly indebted unto the Mortgagee for the sum of Two Million Six Hundred Thousand and 00/100 United States Dollars ($2,600,000.00) (the "Loans"); and, as evidence thereof, Mortgagor confirms the accuracy of the amount due and payable as set forth therein.

WHEREAS, pursuant to the Agreement between Mortgagor and Mortgagee, dated June _3 0_ 2020 (the "Agreement"), the Mortgagor is to provide the Mortgagee with security for the repayment of the Loan with this Mortgage and an assignment of the Mortgagor's insurance on the Vessel (which assignments and mortgage, together with the Note are referred to herein as the "Security Documents");

1

WHEREAS, Mortgagor has agreed to give this Mortgage in order to secure said indebtedness arising pursuant to the Loan as evidenced by the Note, and as security for the timely execution and delivery of the Security Documents and the due and faithful performance of the obligations set forth therein; and

WHEREAS, Mortgagor has agreed to give this Mortgage as security, and has authorized and directed the execution and delivery hereof;

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole (100%) of the motor vessel named below and further described as:

Name: AMERICAN PATRIOT
Official Number: 592015
Call Sign: _____
Flag: United States of America
Registered Gross Tonnage: 98

together with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and all miscellaneous equipment used on board the Vessel and any other appurtenances and accessories and additions, improvements and replacement now or hereafter belonging thereto, whether or not removed therefrom, and all casino gaming equipment and all other items used by the Vessel in her trade, all of which shall be deemed to be included in the term "Vessel" herein, and said document(s) being deemed included herein by reference:

TO HAVE AND TO HOLD all and singular of the above described Vessel, unto Mortgagee, its successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, and Owner's heirs, executors, administrators, successors and assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Owner agrees to pay said indebtedness with interest thereon as herein and in said Note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the Vessel subject thereto.

2




## ARTICLE I - Particular Covenants of Owner

Owner (Mortgagor) covenants as follows:

1.      The Owner is and shall continue to be a citizen of the United States, entitled to own and operate the Vessel under the marine document and Certificate of Inspection, which Owner shall maintain in full force and effect, and all action necessary for the execution, delivery and validity thereof, and of any Good Faith Affidavit filed herewith and of the said Note have been duly taken.

2.      Owner lawfully owns and possesses the Vessel free from all liens and encumbrances whatsoever except as may herein below be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of owner against Mortgagee and/or assignee under any past or future transaction.

3.      Owner shall, at Owner's own expense, cause to be carried and maintained in respect of the Vessel insurance payable in U.S. dollars in an amount sufficient to pay off the outstanding Mortgage balance or equal to the Vessel's fair market value, whichever is greater and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the Vessel performs towage, employees' compensation and other risks and liabilities from time to time specified by Mortgagee including war risks, hull and machinery and pollution coverage. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgagee for the account of Mortgagee and Owner as their respective interests may appear and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall provide a breach of warranty (mortgagee interest) addendum to the insurance policy. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify, Mortgagee of any cancellation of or material change in any insurance coverage. The loss payee for all insurance required under this Mortgage is L. E. T. H<u>dd</u>n (Bank, NA) All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to Mortgagee that all premiums and other charges therefor have been fully paid for the full year of insurance as long as there is a final payment due under the note. Owner shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise.

4.      Owner shall comply with and not permit the Vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and any other jurisdiction wherein operated, and of any department or agency thereof. The Vessel shall only be used for purposes for which it is documented according to its endorsements and Certificate of Inspection and operated from ports within the limits of the Vessel's insurance. Owner shall do everything reasonable and necessary to establish and maintain this Mortgage, the United States Coast Guard documentation, all endorsements and Certificate of Inspections.

5.      Neither Owner, nor any agent thereof, nor Master of the Vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the Vessel or any part thereof any lien whatsoever other than this Mortgage or for the crew's wages or salvage.

3



6.      Owner shall place and keep prominently in the pilot house (if any), chart room or master's cabin or elsewhere on the Vessel, as specified by Mortgagee, any notice of this Mortgage required by Mortgagee, and shall keep a proper copy hereof with the Vessel's papers and exhibit the same to all persons having business with the Vessel, and to Mortgagee on demand. Mortgagor will place, and at all times retain, a properly certified copy of this Mortgage on board the Vessel with its documents and will cause such certified copy to be exhibited to any and all persons having business with the Vessel which might give rise to any maritime lien prior to allowing any services or repairs to the Vessel unless required by an emergency.

7.      Owner shall pay, when due, all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the Vessel. Owner shall, at Owner's own expense, at all times maintain the Vessel in thorough repair and working order and shall make all proper renewals and replacements.

8.      If the Vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by facsimile and electronic mail, confirmed by certified mail, return receipt requested, and forthwith discharge and release the Vessel therefrom, and in any event no later than ten (10) days after such libel, attachment, detention, levy or taking into custody.

9.      Owner shall at all reasonable times afford Mortgagee complete opportunity to inspect the Vessel and the cargos and papers thereof and to examine Owner's related accounts and records; and shall certify quarterly and, if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the Vessel have been paid.

10.     Owner shall not, without the prior written consent of Mortgagee, sell or mortgage the Vessel or any interest therein nor charter her except to persons and for uses lawful for American vessels with a waiver of charterer's *in rem* lien rights and then only provided said insurance be unaffected thereby or adequately replaced. Notwithstanding the foregoing, Mortgagee consents to the operation of the Vessel by OUTTA CONTROL SPORTFISHING, Inc. conditioned upon OUTTA CONTROL SPORTFISHING, Inc. executing the Acknowledgment of Mortgagee's Interest as attached. OUTTA CONTROL SPORTFISHING, Inc. may time or voyage charter the Vessel as long as it remains in operational control and requires all time or voyage charterers to waive any *in rem* lien rights against the Vessel. Mortgagor shall not merge or consolidate with any other person, firm or corporation, or dissolve, without Mortgagee's consent.

11.     From time to time Owner shall execute and deliver such other and further instruments and assurances as in the opinion of Mortgagee's counsel may be required to subject the Vessel more effectively to the lien hereof and to the payment of said indebtedness and for operation of the Vessel as herein provided.

(a)     So long as the Loan secured hereby remains outstanding or there remains any amount due, payment whereof is secured by the lien of this Mortgage, or any obligation of the Security Documents remains unsatisfied or is yet to be performed by Mortgagor, Mortgagor, at its

4



own expense, shall carry Protection and Indemnity insurance in a minimum amount of $3 Million Dollars ($3,000,000.00) as applicable to the Vessel and claims relating to the Vessel, and shall keep the Vessel insured for an amount not less than one hundred twenty-five percent (125%) of the unpaid balance of the Indebtedness against the risks of fire, explosion and marine perils (including, without limitation, a collision or Running Down Clause, ("**Inchmaree Clause**") in an amount that Mortgagee may reasonably require from time to time. When the valuation of the Vessel in any policy of insurance required hereunder may be pertinent, such valuation shall not exceed the amount insured thereby. The policy franchises or deductible averages in the hull and P & I insurances shall be in amounts approved by Mortgagee. The excess liability, increased value, disbursements and other forms of total loss insurance, in such amounts as marine underwriters may allow, may be carried as part of the total amount of the hull insurance required hereunder. The hull insurance policies shall be endorsed to name Mortgagee as a loss payee in respect to all claims in excess of Five Thousand Dollars ($5,000.00). The Mortgagor at its expense shall cause the Hull underwriters to provide a mortgagee endorsement in respect to the Mortgagee's interest (breach of warranty endorsement/rider in favor of Mortgagee for Mortgagor's breaches under the insurance policy). The Mortgagee shall be afforded thirty (30) days written notice of cancellation of the hull insurance and of non-renewal.

        (b)    Mortgagor shall select its own insurance brokers (unless such brokers be unsatisfactory to Mortgagee) and all such insurances shall be effected by Mortgagor through such brokers on policy forms approved by Mortgagee and in companies in good standing and satisfactory to Mortgagee. Certificates for all insurance herein provided for and receipts for the payment of the premiums thereon shall be delivered to Mortgagee upon written request.

        (c)    All insurance and the policies evidencing the insurance shall, by their terms, be taken out in the name of Mortgagor with Mortgagee as sole loss payee as their respective interests may appear. The interest of Mortgagee hereunder is hereby declared to be the full balance of the principal of the Loan ($2,600,000.00) and interest, should interest become due, as well as any obligations arising out of the Security Documents, and any other unpaid amounts secured by the lien of this Mortgage, and in the event of any loss as defined in the policies procured hereunder, Mortgagee shall be paid first the amount of its interest in such insurance with preference to and priority over Mortgagor and any person claiming under or from Mortgagor, and any balance shall be paid to Mortgagor. If such a loss occurs, Mortgagor shall execute and deliver a payment order directing the interested underwriter to pay the proceeds of the insurance applicable to such loss to Mortgagee. If Mortgagor is not in default under this Mortgage, Mortgagee may, but shall not be required to make available to Mortgagor by an appropriate payment order directed to the interested underwriter or by paying over to Mortgagor the proceeds of insurance in an amount sufficient to pay any outstanding bill for repairing the Vessel, provided that Mortgagor pays the amount of the deductible; or to reimburse Mortgagor in whole or in part for any expenditures Mortgagor may have made for repairing the Vessel or to any third party claim, but Mortgagee, as a condition precedent to such reimbursement of Mortgagor, may require Mortgagor to furnish Mortgagee with receipted bills or waivers of liens against the Vessel for repairing the Vessel or waivers of liens or appropriate releases for the third party claim. Should Mortgagee elect, or if Mortgagor does not effect repairs to the Vessel or pay third party claims, the Mortgagee shall be entitled to receive the proceed of any insurance applicable to such loss and upon payment shall credit the net proceeds of any insurance as



provided in Section 7 of Article II hereinafter.

(d)      Mortgagor warrants that it will maintain all such insurances unimpaired by any act, breach of warranty or otherwise, and that it will not be guilty of or permit any act of omission or commission which will in any way invalidate, void or suspend any insurance herein required to be maintained.   Mortgagor shall pay for any loss of or damage to the Vessel by any cause whatsoever and any third party claims whatsoever which would constitute a lien against the Vessel not covered by insurance or for which no reimbursement or incomplete reimbursement is secured from the insurance.

(e)      Mortgagor covenants and agrees that, so long as any portion of the indebtedness hereby secured remains unpaid, it will take out and maintain in full force and effect such additional insurance, as is customarily carried for a ship of the Vessel=s type and in respect to the kind of service that the Vessel may then be engaged upon, in such form and amount as Mortgagee may, from time to time, require.

## ARTICLE II - Default

1.      In any one or more of the following events, herein termed (**"events of default"**) viz.:

(a)      Default in the punctual payment of the principal of the Note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Sections 3, 4, 5, 6, 8 and 10 of Article I hereof, or attempt to violate Sections 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein.  Owner shall be given prompt reasonable notice in writing of any default known to Mortgagee.  Any failure to receive payment under the Note will promptly be given to Mortgagor by written notice.

(b)      Commission of an act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any substantial amount of Owner's property, or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collection thereof until the time above limited for the payment.

(c)      A default shall occur in the event the Vessel is chartered to any party without the written consent of the Mortgagee having been obtained in advance.

then, and in every such case, Mortgagee may:

(1)      Declare the principal of said Note and all accrued interest thereon to be

6



and they shall then become and be due and payable forthwith, after which they shall bear interest at 7.35% per annum as allowed by 46 U.S.C. '31322(b).

(2)    Recover judgment for, and collect out of any property of the Owner, any amount thereby or otherwise due thereunder; and collect all earned charter hire and freight monies relating to services performed by the Vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing.

(3)    Retake the Vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold said Vessel in Mortgagee's or in Owner=s name for purposes of leasing, chartering, operating or otherwise using the Vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the Vessel free of charge at Owner's premises or elsewhere at Owner's expense; and sell the Vessel free from any claim by Owner of any nature in the manner provided by law; to the extent permitted by law, such sale may be public or private, with notice, without having the Vessel present, and Mortgagee may become the purchaser.

(4)    In the event Mortgagee exercises any remedy contained in Article II hereof, then Mortgagor hereby appoints Mortgagee and its agents as attorneys-in-fact for the purpose of transferring, in the Mortgagor's name and stead, the Vessel and to take all necessary action or steps to transfer the Vessel. This appointment of Mortgagee and its agent as attorney-in-fact is irrevocable until the entire balance under this Mortgage or Note is paid.

2.    In the event that the Vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of Mortgagee, to receive or to take possession thereof, and to defend any action and discharge any lien.

3.    Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default. In any such suit, Mortgagee shall be entitled to obtain appointment of a receiver of the Vessel and the earnings thereof, who shall have full rights and powers to use and operate the Vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4.    Owner, at anytime during this Mortgage, can give possession of the Vessel over to the Mortgagee with all payments made under this Mortgage becoming property of the Mortgagee. The parties to this Agreement specifically envision that the Mortgagee shall be entitled to any deficiency against Owner for any breach under this Mortgage or the Note.

5.    The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the Vessel by Mortgagee, of any claim for damages, of any judgment, and of any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

7



FIRST: To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the Note secured hereby, with default interest at the highest legal rate per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND: To the payment of all interest, to date of payment, on the Note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

6.     All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said Note or as a result of suit brought by any charterer of the Vessel or their assigns against Mortgagor, and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at the highest legal rate per annum, and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

7.     The net proceeds of any judicial or other sale, of any charter, management or other use of the Vessel by Mortgagee, and of any insurance received by Mortgagee (except to the extent that such insurance proceeds are to be paid to Mortgagor in accordance with any provisions of this Mortgage) shall be applied as follows:

FIRST: To the payment of all attorney's fees, court costs, and other expenses incurred by Mortgagee pursuant to the terms of this Mortgage, the Note and the other Security Documents;

SECOND: To the payment of any claim or the balance of any claim which Mortgagee may have for reimbursement, together with interest thereon at the same rate as is provided upon the principal amount of the Note, for advances and expenditures which Mortgagee has made under the provisions of Sections 1,2,3 and 4 of this Article II or any of the Security Documents, or for any infraction by Mortgagor of Sections 1 to 11 inclusive, of Article I above, or to protect its interest in the collateral which secures the obligations of Mortgagor to Mortgagee including those created or to be created pursuant to the Security Documents;

THIRD: To the payment or reduction of the principal and interest, if any, due on the Note and any costs or expenditures made by the Mortgagee in the exercise of its rights or the protection of its security under the Security Documents; and in the event that such proceeds shall be insufficient to pay the entire amount due, to the payment or reduction of principal; and

8



FOURTH: The balance, if any, and provided that no legal proceedings are pending in respect to any claim by the Mortgagor or any other party to any of the Security Documents against the Mortgagee for matters which pertain to the Mortgage, the Loan, or the Security Documents, shall be paid to Mortgagor; provided, however, that should there be insufficient funds to liquidate all claims of Mortgagee for any unpaid balance, with interest thereon as provided in this Mortgage.

8.    Mortgagor shall not at any time insist upon or plead or in any manner whatever, claim, or take the benefit or advantages of any stay or extension, valuation or appraisement law (hereby particularly waiving same), and Mortgagor covenants that it will not hinder, delay or impede the execution of any power herein granted and delegated to Mortgagee, but that it will suffer and permit the execution of every such power as though no such law or laws had been made or enacted, and that after any sale or sales Mortgagor will not claim or exercise any right under any statute or otherwise to redeem the property so sold or any part thereof.

### ARTICLE III - Possession Until Default

Until one or more of the defaults hereinbefore described, Owner shall be permitted to retain actual possession and use of the Vessel.

### ARTICLE IV - Sundry Provisions

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Mortgagee herein, Mortgagee shall refer to the plural.

FUTURE ADVANCES. This Mortgage is executed for the purpose of securing not only the payment of the above-described Note but also to secure all future advances made by the holder of said Note to the Mortgagor; and said Mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above-described Note.

[Signature Page Follows]

9



IN WITNESS WHEREOF, on the day and year first above written, Owner has caused this Mortgage to be executed in its name.

Witness

OUTTA CONTROL SPORTFISHING, INC.

Witness

By: _____

Title: _____

## ACKNOWLEDGMENT

STATE OF FLORIDA )
COUNTY OF BROWARD )

BE IT KNOWN, that on this _____ day of June, 2020, personally appeared before me, Ralph Hawkins, as President of Outta Control Sportfishing, Inc., to me known and known to me to be the individual who executed the within instrument and acknowledged the within instrument to be of his own free act and deed and _____ and _____ as witnesses, to me known to be the persons who witnessed the within instrument.

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this _____ (date) by (name of person acknowledging), who is personally known to me or who has produced (type of identification) as identification.

[Notary Seal]

Notary Public State of Florida
Kurt S Hilberth
My Commission GG 152659
Expires 10/18/2021

Notary Public

_____
Name typed, printed or stamped
My Commission Expires: _____

10

  

## AFFIDAVIT AS TO GOOD FAITH, LIENS, ETC.

STATE OF FLORIDA   )
COUNTY OF BROWARD  )

      Ralph Hawkins, as President of Outta Control Sportfishing, Inc., being duly sworn, deposes and says that Outta Control Sportfishing, Inc. is the Mortgagor described in and which executed the foregoing Mortgage; and that the said Mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditors of the Mortgagor or any lienor of the mortgaged Vessel.

OUTTA CONTROL SPORTFISHING, INC.

By: _____

Subscribed and sworn to before me this _30_ day of June, 2020.

_____
NOTARY PUBLIC, State of Florida

_____
Printed Name
My Commission Expires:_____

Notary Public State of Florida
Kurt S Hilberth
My Commission GG 152659
Expires 10/18/2021

11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN ADMIRALTY

CASE NO. ___22-cv-89___

L.E.T. HOLDING OF HOLLYWOOD, LLC,
a Florida Limited Liability Company,

       Plaintiff,

  vs.

M/V AMERICAN PATRIOT, Official No. 592015,
her engines, tackle, appurtenances, etc., *in rem*, and
OUTTA CONTROL SPORTFISHING, INC., *in personam*,

       Defendants.

_____/

# EXHIBIT "3"

# PROMISSORY NOTE

$2,600,000.00

June _30_, 2020
Broward County, Florida

FOR VALUE RECEIVED, the undersigned promises to pay to the order of L.E.T. Holding of Hollywood, LLC, a Florida limited liability company at 3111 N. Ocean Drive, Apt. 1012, Hollywood, FL 33019 or at such other address as may be indicated in writing, in the manner hereinafter specified, the principal sum of TWO MILLION SIX HUNDRED THOUSAND and 00/100 Dollars ($2,600,000.00) with interest at a rate of eight percent (8%). The said principal and interest shall be payable in lawful money of the United States of America, on the date and in the following manner:

> The sum of $2,600,000.00 representing a payment of principal and interest shall be due and payable on September 1, 2020 or no less than 90 days after restrictions on the vessel's operation due to Covid-19. Thereafter, at Mortgagee's direction, this Note becomes a due on demand Note requiring payment in full within 20 days of delivery, in writing, of the demand.

> THIS IS A BALLOON PREFERRED SHIP MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $2,600,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

If default be made in the payment of any installment under this note, and if such default is not made good within 15 days, the entire principal sum shall at once become due and payable without notice at the option of the holder of this Note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same at a later time for the same default or for any subsequent default. Any payment not received within 10 days of the due date shall include a late charge of 5% of the payment due. In the event of default in the payment of this note, and if the same is placed in the hands of any attorney for collection, the undersigned hereby agree to pay all costs of collection, including a reasonable attorneys' fee.

Makers waive demand, presentment for payment, protest, and notice of nonpayment and dishonor.

_____ (Seal)
Borrower - Ralph Hawkins, as President of
Outta Control Sportfishing, Inc., a Florida
Corporation

_____ (Seal)
Ralph Hawkins, individually as personal guarantor

IN WITNESS WHEREOF, the undersigned have executed this Stock Transfer Agreement as of the date first written above.

TRANSFEROR:

SEA LEGS MARINA, INC., a Florida Corporation:

By: _____
     Ralph Hawkins, President

TRANSFEREE:

L.E.T. HOLDING OF HOLLYWOOD, LLC, a Florida limited liability company

By: _____
     Lewis E. Tedaldi, Manager

SEA LEGS MARINA, INC., a Florida corporation,

By: _____
     Ralph Hawkins
Its: President
Taxpayer ID No.: 59-1287060

### AFFIDAVIT AS TO GOOD FAITH, LIENS, ETC.

STATE OF FLORIDA     )
COUNTY OF BROWARD   )

     Ralph Hawkins, as President of Outta Control Sportfishing, Inc., being duly sworn, deposes and says that Outta Control Sportfishing, Inc. is the Mortgagor described in and which executed the foregoing Mortgage; and that the said Mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditors of the Mortgagor or any lienor of the mortgaged Vessel.

OUTTA CONTROL SPORTFISHING, INC.



By: _____

Subscribed and sworn to before me this _30_ day of June, 2020.

Notary Public State of Florida
Kurt S Hilberth
My Commission GG 152659
Expires 10/18/2021

NOTARY PUBLIC, State of Florida
_____
Printed Name
My Commission Expires:_____

11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN ADMIRALTY

CASE NO. _____22-cv-89_____

L.E.T. HOLDING OF HOLLYWOOD, LLC,
a Florida Limited Liability Company,

        Plaintiff,

   vs.

M/V AMERICAN PATRIOT, Official No. 592015,
her engines, tackle, appurtenances, etc., *in rem*, and
OUTTA CONTROL SPORTFISHING, INC., *in personam*,

        Defendants.

_____/

# EXHIBIT "4"

# Bill of Sale

This Bill of Sale, made on _21_, September, 2020 between Outta Control Sportfishing, Inc., a Florida limited liability company (Seller"), and ~~L.E.T. Holding Hollywood, LLC, a Florida limited liability company ("Buyer").~~ _Lewis Tedaldi_

Witnesseth, that Seller, in consideration of the sum of Ten DOLLARS ($10.00) and other good and valuable consideration paid to Seller by Buyer, receipt and sufficiency of which is hereby acknowledged, delivers, grants, bargains, sells and transfers forever to Buyer the following goods and chattels, to wit:

   **The vessel American Patriot, Hull number 592015**

Seller covenants to Buyer that Seller is the lawful owner of the said goods and chattels; that they are free from all encumbrances; that Seller has good right to sell that property, and that Seller will warrant and defend the sale of said property, goods and chattels unto the Buyer against the lawful claims and demands of all persons whomsoever.

"Seller" and "Buyer" shall be used for singular or plural, natural or artificial, which terms shall include the heirs, legal representatives, successors and assigns of Seller and Buyer whenever the context so requires or admits.

                              Outta Control Sportfishing, Inc., a Florida corporation

                              By: _Ralph Hawkins_  _President_
                              Ralph Hawkins, President (Seller)

State of Florida
County of Broward

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this _21_ day of September, 2020 by Ralph Hawkins, President of Outta Control Sportfishing, Inc., a Florida corporation, who is personally known to me or who has produced _FL DL_ as identification.

[Notary Seal]                 _signature_
                              Notary Public
                              _____
                              Name typed, printed or stamped
                              My Commission Expires: _____

Notary Public State of Florida
Kurt S Hilberth
My Commission GG 152659
Expires 10/18/2021

# EXHIBIT C

# Bill of Sale

This Bill of Sale, made on ~~Z/,~~ September, 2020 between Outta Control Sportfishing, Inc., a Florida limited liability company (Seller"), and ~~L.E.T. Holding Hollywood, LLC, a Florida limited liability company ("Buyer").~~ *Lewis Tebaldi*

Witnesseth, that Seller, in consideration of the sum of Ten DOLLARS ($10.00) and other good and valuable consideration paid to Seller by Buyer, receipt and sufficiency of which is hereby acknowledged, delivers, grants, bargains, sells and transfers forever to Buyer the following goods and chattels, to wit:

> **The vessel American Patriot, Hull number 592015**

Seller covenants to Buyer that Seller is the lawful owner of the said goods and chattels; that they are free from all encumbrances; that Seller has good right to sell that property, and that Seller will warrant and defend the sale of said property, goods and chattels unto the Buyer against the lawful claims and demands of all persons whomsoever.

"Seller" and "Buyer" shall be used for singular or plural, natural or artificial, which terms shall include the heirs, legal representatives, successors and assigns of Seller and Buyer whenever the context so requires or admits.

Outta Control Sportfishing, Inc., a Florida corporation

By: _____

Ralph Hawkins, President (Seller)

State of Florida
County of Broward

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this ~~Z/~~ day of September, 2020 by Ralph Hawkins, President of Outta Control Sportfishing, Inc., a Florida corporation, who is personally known to me or who has produced _____ as identification.

[Notary Seal]

Notary Public _____

Name typed, printed or stamped

My Commission Expires: _____

Notary Public State of Florida
Kurt S Hilberth
My Commission GG 152659
Expires 10/18/2021

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

In Re:

OUTTA CONTROL SPORTFISHING, INC.,

Debtor.

_____/

CHAPTER 11
CASE NO. 22-12081-PDR
SUBCHAPTER V

### DEBTOR'S STATEMENT UNDER 11 U.S.C. § 1116 (1)(B)

Debtor-in-Possession, Outta Control Sportfishing, Inc. ("Debtor"), pursuant to 11 U.S.C. §

1116(1)(B), states that at the time of this filing no balance sheet, statement of operations, or cash-

flow statement has been prepared and no federal tax return has been filed.

I, Ralph Hawkins, member of Outta Control Sportfishing, Inc., declares under penalty of

perjury that the foregoing information is true and correct to the best of my knowledge, information,

and belief.

Ralph Hawkins

Respectfully Submitted,

Law Offices of Richard R. Robles, P.A.
Attorneys for Debtor
905 Brickell Bay Drive, Suite 228
Miami, Florida 33131
(305) 755-9200
Primary Email.          rrobles@roblespa.com
Secondary Emails.       assistant@roblespa.com

/s/ Richard R. Robles, Esquire
Richard R. Robles, Esquire
Florida Bar No. 0088481

# EXHIBIT E

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### Fort Lauderdale Division

In Re:

OUTTA CONTROL SPORTFISHING, INC.,

      Debtor.

_____/

CHAPTER 11
CASE NO. 22-12081-PDR
SUBCHAPTER V

## DEBTOR'S NOTICE OF FILING PAYROLL AND SALES TAX REPORTS

      Outta Control Sportfishing, Inc., Debtor-in-Possession, ("Debtor") pursuant to Local Rule 2081-1(A), having filed its Chapter 11 Petition on <u>March 16, 2022</u>, (the "Filing Date") files its Payroll and Sales Tax Reports as follows:

## *PAYROLL TAXES:*

I.    Payroll taxes accrued for 1st month prior to filing:           TBD
     Date Paid: _____ Amount Paid _____
     Place of Payment: _____

II.   Payroll taxes accrued for 2nd month prior to filing:           TBD
     Date Paid: _____ Amount Paid _____
     Place of Payment: _____

III.  Payroll taxes accrued for 3rd month prior to filing:           TBD
     Date Paid: _____ Amount Paid _____
     Place of Payment: _____

IV.  Payroll taxes accrued for 4th month prior to filing:           TBD
     Date Paid: _____ Amount Paid _____
     Place of Payment: _____

V.    Payroll taxes accrued for 5th month prior to filing           TBD
     Date Paid: _____ Amount Paid _____
     Place of Payment: _____

VI.  Payroll taxes accrued for 6th month prior to filing:           TBD
     Date Paid: _____ Amount Paid _____
     Place of Payment: _____

VII.  Amount still due and owing for six month period preceding filing: _____ TBD

VIII. Amount still due and owing for earlier periods:            TBD

## *SALES TAXES:*

I.  Gross Sales subject to Sales Tax for 1st month prior to filing:      N/A
    Sales taxes accrued for 1st month prior to filing:
    Date Paid: ____N/A____ Amount Paid ____N/A____
    Place of Payment: _____N/A_____

II. Gross Sales subject to Sales Tax for 2nd month prior to filing:____N/A____
    Sales taxes accrued for 2nd month prior to filing:
    Date Paid: ____N/A____ Amount Paid ____N/A____
    Place of Payment: _____N/A_____

III. Gross Sales subject to Sales Tax for 3rd month prior to filing:____N/A____
    Sales taxes accrued for 3rd month prior to filing:
    Date Paid: ____N/A____ Amount Paid ____N/A____
    Place of Payment: _____N/A_____

IV. Gross Sales subject to Sales Tax for 4th month prior to filing:      N/A
    Sales taxes accrued for 4th month prior to filing:
    Date Paid: ____N/A____ Amount Paid ____N/A____
    Place of Payment: _____N/A_____

V.  Gross Sales subject to Sales Tax for 5th month prior to filing:      N/A
    Sales taxes accrued for 5th month prior to filing
    Date Paid: ____N/A____ Amount Paid ____N/A____
    Place of Payment: _____N/A_____

VI. Gross Sales subject to Sales Tax for 6th month prior to filing:      N/A
    Sales taxes accrued for 6th month prior to filing:
    Date Paid: ____N/A____ Amount Paid ____N/A____
    Place of Payment: _____N/A_____

VII. Amount still due and owing for six month period preceding filing:      N/A

VIII. Amount still due and owing for earlier periods:      N/A

Attached are copies of proof of all payments made for payroll taxes and sales taxes for the 6 months preceding the filing date.

I, Ralph Hawkins, president of Outta Control Sportfishing, Inc., declare under penalty of perjury that the foregoing information is true and correct to the best of my knowledge, information and belief.

Date: 3/30/2022 By: _Ralph H_

_Ralph Hawkins_
print name of individual signing

A certificate of service complying with Local Rules 2002-1(F) and 2081-1(A)(3) reflecting service on the U.S. Trustee, the Internal Revenue Service, the Florida Department of Revenue and any other taxing authority named in the report must accompany the filing of this document.