

**ORDERED in the Southern District of Florida on June 29, 2022.**



Peter D. Russin, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

In re:

Outta Control Sportfishing, Inc.,

  Debtor.

_____/

Case No. 22-12081-PDR

Chapter 11

## ORDER GRANTING MOTION TO DISMISS

The Debtor filed this bankruptcy to stay a foreclosure action on a preferred ship mortgage brought by its purported lender in District Court. When a debtor files a bankruptcy petition as a result of a two-party dispute for the sole purpose of gaining an advantage in a foreclosure action by avoiding the posting of a bond in order to regain possession of an arrested vessel, the debtor has filed in bad faith, which is cause for dismissal under 11 U.S.C. § 1112. That is what happened here. For the reasons that follow, this case is dismissed.

## Findings of Fact

The Debtor operates a sport fishing charter business. In 2019, the Debtor purchased a vessel, the M/V American Patriot, for $500,000 to add to its operations which at the time consisted of one other smaller vessel, the Super Sea Legs.[1] The American Patriot required significant repairs and updates. Around the time of the purchase, the Debtor's principal, Ralph Hawkins, approached Lewis Tidaldi, principal of L.E.T. Holding of Hollywood, LLC ("LET"), about a business proposal, which resulted in Tidaldi disbursing at least $2.6 million over time from the end of 2019 until sometime in 2021 (the "Purported Loan"). The proceeds were ultimately used to repair and update the American Patriot. The Debtor has made no payments to LET.[2]

The parties dispute the purpose of the funds and which entities controlled by Hawkins they were meant to benefit. Tidaldi testified that the money was supposed to be a short-term loan to the Debtor for repairs to the American Patriot, secured by the vessel. The Debtor and LET signed a note and a ship mortgage for the loan amount of $2.6 million, dated June 2020, but the ship mortgage was not recorded.[3] The Debtor contends the documents were only signed for accounting and tax purposes for the benefit of LET and Tidaldi, and the ship mortgage was never intended to be recorded. The Debtor argues that neither party intended for the loan documents to

---

[1] (Doc. 76).

[2] (Doc. 76).

[3] (Doc. 84-2).

be binding and a valid lien on the vessel, as evidenced by the parties' purposeful omission of the vessel's official number on the documents at the time of signature, the inclusion of which is necessary to perfect the ship mortgage. Instead, Hawkins testified that the funds received from Tidaldi were consideration in exchange for stock in another Hawkins-controlled entity, Sea Legs Marina, Inc. ("Sea Legs").

On February 9, 2022, LET filed an action against the Debtor in the U.S. District Court for the Middle District of Florida to enforce the ship mortgage on the American Patriot due to Debtor's alleged default on the Purported Loan ("District Court case").[4] The Verified Complaint alleges that LET loaned $2.6 million to the Debtor to repair the vessel and attaches the signed loan agreement, ship mortgage, and note.[5] Upon filing the action, LET filed a Motion for Issuance of Warrant In Rem under Admiralty Rule C, arguing that "probable cause exists for the issuance of a warrant for arrest of the M/V AMERICAN PATRIOT and that all other conditions set forth in Local Rule 1.03(a) and Local Admiralty and Maritime Practice Manual Section 3 have been satisfied."[6] The District Court granted the motion "[p]ursuant to

---

[4] *L.E.T. Holding of Hollywood, LLC v. Outta Control Sportfishing, Inc., et al.*, 2:22-cv-00089-JLB-NPM, (M.D. Fla. Feb. 9, 2022) (Count I of the complaint is for Foreclosure of Maritime Lien In Rem and Count II for Breach of Preferred Ship Mortgage.); (Doc. 54). Docket entries filed in the District Court case are cited as "(District Case Doc. XX)."

[5] (District Case Doc. 1, at 4; Ex. 1–3). At some point the vessel's official number was inserted into the ship mortgage and the parties dispute whether this was appropriate. A determination of that factual dispute is unnecessary for purposes of ruling on the Motion to Dismiss because issues involving the validity and perfection of the ship mortgage are before the District Court in the District Court case.

[6] (District Case Doc. 9). Subparagraph 3(a)(i) of Supplemental Rule C for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure states that "[t]he court must review the complaint and any supporting papers. If the conditions for an *in rem* action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action." Similarly, Section 3(a)(1)(A) of the Middle District of Florida Admiralty and Maritime Practice Manual states that "a judge must first review the verified complaint

Supplemental Rule C(1) of the Federal Rules of Civil Procedure and Section 3(a)(1)(A)

of the Middle District of Florida Admiralty and Maritime Practice Manual

(promulgated pursuant to Local Rule 1.03(a))," and issued the warrant for arrest.[7]

The District Court also granted LET's request to appoint a substitute custodian for

the vessel.[8] To regain possession of the vessel, the Debtor was required to post a

bond.[9]

The arrest of the vessel prompted the Debtor to file for bankruptcy on March

16, 2022, to regain control and operation of the vessel after seeking relief from this

Court.[10] The Debtor did not respond to the complaint or attempt to litigate the matter

in any way in District Court before filing the bankruptcy petition. Shortly after filing

the bankruptcy petition, the Debtor filed an Emergency Motion for Turnover of

Property (of the American Patriot vessel) and LET moved for relief from the

automatic stay.[11] The Court ultimately ordered turnover of the vessel to the Debtor,

---

and any other relevant papers before the clerk issues the warrant of arrest or summons in rem. If probable cause exists, the plaintiff must prepare an order directing the clerk to issue a warrant of arrest or summons."

[7] (District Case Doc. 10).

[8] (District Case Doc. 14).

[9] *See* 28 U.S.C. § 2464 (providing for the payment of a bond by the "claimant of the property" to repossess an arrested vessel). Subparagraph 5(b) of Supplemental Rule E for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure states that "[t]he owner of any vessel may file a general bond or stipulation, with sufficient surety, to be approved by the court . . . Thereupon the execution of all such process against such vessel shall be stayed so long as the amount secured by such bond or stipulation is at least double the aggregate amount claimed by plaintiffs in all actions begun and pending in which such vessel has been attached or arrested."

[10] (Doc. 1).

[11] (Docs. 7, 16).

conditioned on the Debtor binding insurance in the amounts determined at the hearings, and denied LET's request for stay relief and adequate protection payments.[12] LET then moved to dismiss this case as a bad faith filing ("Motion to Dismiss"),[13] and the Court held an evidentiary hearing on the matter on May 11, 2022.

## Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). The Court has statutory authority to hear and determine this case under 28 U.S.C. §157(b)(2)(A) and the general order of reference from the United States District Court for the Southern District of Florida. S.D. Fla. Local Rule 87.2(a). Venue is proper under 28 U.S.C. § 1408.

## Conclusions of Law

Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court shall . . . dismiss a case under this chapter . . . for cause . . ." which includes bad faith. 11 U.S.C. § 1112(b)(1). "[T]here is no particular test for determining whether a debtor has filed a petition in bad faith." *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988). Instead, "the determination of cause under § 1112(b) is subject to judicial discretion under the circumstances of each case." *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *Chu v. Syntron Bioresearch, Inc. (In re Chu)*, 253 B.R. 92, 95 (S.D. Cal. 2000)

---

[12] (Docs. 21, 37).

[13] (Doc. 52).

("Bankruptcy courts have broad discretion" in determining what constitutes "cause" under § 1112(b).). Therefore, "[d]eterminations of good faith should be made on a case by case basis after evaluating the totality of the circumstances." *In re Schultz*, 436 B.R. 170, 176 (Bankr. M.D. Fla. 2010); *In re Balboa St. Beach Club, Inc.*, 319 B.R. 736, 740 (Bankr. S.D. Fla. 2005).

In determining bad faith, "courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *Phoenix Piccadilly*, 849 F.2d at 1394 (quoting *Albany Partners*, 749 F.2d at 674). These factors include the following non-exhaustive list that can serve as guidance to courts making this determination:

> (i) the debtor has only one asset in which it does not hold legal title;
>
> (ii) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;
>
> (iii) the debtor has few employees;
>
> (iv) the property is the subject of a foreclosure action as a result of arrearages on the debt;
>
> (v) the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in a pending state court action; and
>
> (vi) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*Id.* at 1394–95; *see also State St. Houses, Inc. v. N.Y. State Urb. Dev. Corp. (In re State St. Houses, Inc.)*, 356 F.3d 1345, 1346–47 (11th Cir. 2004) (concluding the "*Phoenix*

2afaeb8f88313a5c

*Piccadilly* factors are appropriate guidelines for consideration" when evaluating bad faith but they are "non-exhaustive and not to be rigidly applied"). The facts in this case support a finding of bad faith.

**I.      The Debtor has very few assets and creditors, only one employee, and is party to a pending foreclosure action for nonpayment of a disputed mortgage on its vessel.**

The first four *Piccadilly* factors support a finding of bad faith. First, the Debtor has essentially two assets: the American Patriot vessel that is the subject of its dispute with LET, and the smaller vessel Super Sea Legs.[14]

Second, the Debtor's only potential unsecured creditors include Marco River Marina, which filed a Proof of Claim for $0, and the IRS, which filed a Proof of Claim for $700.[15] The Debtor has three secured creditors: Amberjack Cruises LLC holding a ship mortgage on the American Patriot, with a claim of $300,000; Fourchon Charters LLC holding a ship mortgage on Super Sea Legs, with a claim of $290,000; and LET holding the disputed mortgage on the American Patriot, with a claim of over $3 million.[16] The only claim that is in dispute and not current is LET's.

Third, the Debtor's only employee is Hawkins, although it has about a dozen independent contractors who work on the vessels when they are operating.[17]

---

[14] (Doc. 65). Debtor's Schedule A/B also lists assets such as boating equipment and permits.

[15] Proof of Claim 1-1; Proof of Claim 3-1.

[16] (Doc. 65).

[17] (Doc. 85).

Fourth, the American Patriot is the subject of the District Court case because of the Debtor's alleged payment default on the Purported Loan. The issues regarding the disputed mortgage are before the District Court and have not been brought before this Court for determination.[18] In any event, the record is clear, and the parties agree that the Debtor never made any payment to LET.[19]

Thus, the ultimate question is whether the disputed ship mortgage is valid and perfected, and that question is squarely before the District Court. The Debtor filed bankruptcy seemingly choosing to litigate that issue before the Bankruptcy Court instead of the District Court, and while that may under certain circumstances withstand scrutiny, in this case it does not.

II.    **The Debtor's financial problems entirely involve its two-party dispute with LET that can be resolved in the District Court case and the timing of the bankruptcy filing suggests an intent to forum shop.**

The dominant factor that precipitated the Debtor filing bankruptcy was the filing of the District Court case and arrest of the vessel, which resulted in the Debtor's inability to operate at least until the Debtor had an opportunity to regain possession. The Debtor has argued that the bankruptcy was filed so that the Debtor could pursue rights that it claims it has in bankruptcy but not in the District Court, namely

---

[18] The Debtor disputes LET's claim as a secured creditor arguing that LET does not actually hold a lien against the American Patriot and submits this argument as one of the main reasons that the Court should not dismiss the case. The dispute regarding the validity of the loan documents that LET holds against the American Patriot and the perfection of the ship mortgage are issues squarely before the District Court. To be brought before this Court the Debtor would have needed to remove the action here or would instead need to file an adversary proceeding under Rule 7001(2). *See* Fed R. Bankr. P. 7001(2) (proceedings "to determine the validity, priority, or extent of a lien or other interest in property" must be heard in an adversary proceeding). The Debtor has taken no such actions to date.

[19] (Doc. 76).

immediate turnover of the vessel pursuant to 11 U.S.C. § 543. At the time of the bankruptcy filing, the Debtor was, prior to the District Court case and arrest of the vessel, seemingly paying its expenses as they became due other than the LET obligation. Since Debtor's financial problems revolve wholly around the resolution of its dispute with LET, this case is a two-party dispute. *See In re Midway Invs., Ltd.*, 187 B.R. 382, 389 (Bankr. S.D. Fla. 1995) (finding the case was "plainly a two party dispute" where the creditor's action in risking the debtor's imminent loss of its only asset "was the dominant factor that precipitated [the bankruptcy] filing, and forced the timing of the filing" and the debtor "faced no imminent threats from other creditors").

"Petitions in bankruptcy arising out of a two-party dispute do not per se constitute a bad-faith filing by the debtors." *In re Stolrow's, Inc.*, 84 B.R. 167, 171 (9th Cir. BAP 1988). Still, "courts do not condone the use of Chapter 11 to resolve two-party disputes in the bankruptcy court when such litigation is still pending in a non-bankruptcy forum prior to the commencement of the case." *In re Richard Eric Serfass*, 325 B.R. 901, 906 (Bankr. M.D. Fla. 2005). As such, courts have found bad faith where there "is an apparent two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction." *Oasis at Wild Horse Ranch, LLC v. Sholes (In re Oasis at Wild Horse Ranch, LLC)*, Nos. AZ–11–1142–DKiMY, 11–01124–JMM, 2011 WL 4502102, at *10 (9th Cir. BAP Aug. 26, 2011). For instance, where the debtor "faces no threat from any of its other purported creditors, [its] financial problems are a two-party dispute suitable for resolution" outside of the bankruptcy court, which

supports a finding of bad faith. *In re State St. Houses, Inc.*, 305 B.R. 738, 742 (S.D. Fla. 2003), *aff'd*, 356 F.3d 1345 (11th Cir. 2004).

The Debtor's dispute can be resolved in the District Court case that was stayed by the filing of this bankruptcy. The Debtor admits that the relief it sought in filing this bankruptcy was not available in District Court, namely its ability to keep operating the vessel while resolving the dispute without having to post a bond.[20] The Debtor chose the bankruptcy court forum to avoid the expense of a bond. In other words, while the opportunity to reorganize was a potential byproduct of filing, the Debtor's primary purpose was to litigate the dispute in a more favorable forum.[21] *See In re Richard Eric Serfass*, 325 B.R. at 905–06 (The "hallmarks of bad faith filing" include a two-party dispute and an absence of a sincere desire to reorganize the financial affairs of the debtor, with the real test being "the presence of the honest intention of the debtor, the actual need, and the ability to effectuate the aim of the reorganization." (citation omitted)); *In re Schultz*, 436 B.R. 170, 179 (Bankr. M.D. Fla. 2010) (finding bankruptcy was not filed in good faith where "[t]he circumstances of the case demonstrate that the Debtor did not seek Chapter 11 relief with the intent or ability to reorganize his finances under the bankruptcy laws").

---

[20] "[W]henever a warrant of arrest or other process in rem is issued in any admiralty case, the United States marshal shall . . . discharge the property arrested . . . on receiving from the respondent or claimant of the property a bond or stipulation in double the amount claimed by the libellant, with sufficient surety . . ." 28 U.S.C. § 2464.

[21] Interestingly, according to the Debtor, the vessel is valued at $1,800,000. (Doc. 76). Assuming the existence of a valid mortgage and LET holding a claim well over $2,600,000, there would be no equity in the vessel by the Debtor's own estimation, so protecting the equity in its property was likely not a reason for filing this bankruptcy since the Debtor does not believe there is any.

In terms of reorganization, the Debtor stated that to reach a consensual plan, it needs to value the vessel and determine what, if any, money was paid by Tidaldi to the Debtor. The Debtor further stated that it seeks to resolve the dispute with LET through this bankruptcy because, if money is owed, the Debtor does not intend to pay nothing to LET. However, the issue of whether any money and how much is owed to LET is squarely before the District Court and can be resolved there. While it is true that as the Debtor argues it would potentially be beneficial to LET for the Debtor to keep operating the vessel without paying a bond, in a two-party dispute, the Court is loath to force LET to litigate its claim in the Debtor's chosen forum instead of the District Court, LET's chosen forum.

The Debtor's filing of this bankruptcy, shortly after the arrest of the American Patriot but before responding to the complaint or putting up a bond to regain possession of the vessel, indicates an intent to frustrate LET's legitimate efforts to enforce its rights under the disputed mortgage in the District Court. More so, it suggests an attempt by the Debtor to forum shop. Essentially, the Debtor filed this bankruptcy to circumvent the procedural hurdles in District Court that were not to its liking, such as paying a bond. In the context of a two-party dispute, this is an inappropriate use of the bankruptcy court and supports a finding of bad faith under the specific facts of this case. *See In re Argus Grp. 1700, Inc.*, 206 B.R. 757, 765–66 (E.D.Pa.1997) (finding bad faith where petition was filed to obtain alternative forum for dispute resolution); *Furness v. Lilienfield*, 35 B.R. 1006 (D. Md. 1983) ("The

Bankruptcy provisions are intended to benefit those in genuine financial distress. They are not intended to be used as a mechanism to orchestrate pending litigation.").

Accordingly, the Court **ORDERS**:

1.    The Motion to Dismiss (Doc. 52) is **GRANTED** and this case is **DISMISSED**.

2.    The alternative relief sought by LET, for relief from the automatic stay and/or adequate protection payments, is **DENIED** as moot.

3.    All other pending motions are denied as moot other than those involving administrative expense claims.

4.    The Debtor shall file any pending Monthly Operating Reports within fourteen (14) days of the entry of this Order and simultaneously pay the United States Trustee any unpaid sums due pursuant to 28 U.S.C. § 1930(a)(6).

5.    The Debtor shall pay the Bankruptcy Clerk of the Court any outstanding fees, costs, and charges in connection with this case within fourteen (14) days of the entry of this Order.

6.    The Debtor shall pay all administrative expense claims within fourteen (14) days of the entry of this Order and any subsequent order entered granting such administrative expense claim, including that of the Subchapter V Trustee.

7.    This Court shall retain jurisdiction to enforce the provisions of this Order.

### #

Copies To:

David Softness

*Attorney David Softness is directed to serve a copy of this Order on all interested parties.*